In re HURLEY'S ESTATE.

HURLEY, et al, Appellants, v. DEVITT, et al, Respondents.

(248 N. W. 194.)

(File No. 7395. Opinion filed April 24, 1933.)

*Alan Bogue,* of Parker, for Appellants.

*Conway, Feyder & Conway,* of Sioux Falls, for Respondents.

CAMPBELL, J. Jeremiah F. Hurley died testate in Lincoln county, S. D., in December, 1915. There survived him his widow, six sons, and three daughters. By his will executed in August, 1915, he admittedly gave his widow a life estate in all his property, real and personal, and undertook to dispose of the remainder to his nine children. The proper construction of the will with reference to the gift over after the life estate is the only question presented by this appeal. The portion of the will material to this question reads as follows:

"To my son, Alfred Hurley, I devise and bequeath three-fifths of the amount of value of my property, real and personal, at the time of distribution to my heirs at law.

"To my son, Thomas Hurley, I devise and bequeath three-fifths of the amount of value of all my property, real and personal, at the time of distribution to my heirs at law.

"To my son, Melvin Hurley, I devise and bequeath three-fifths of the amount of value of all my property, real and personal, at the time of distribution to my heirs at law.

"To my son, Charles Hurley, I devise and bequeath three-fifths of the amount of value of all my property, real and personal, at the time of distribution to my heirs at law.

"To my son, Harry Hurley, I devise and bequeath three-fifths of the amount of value of all my property, real and personal, at the time of distribution to my heirs at law.

"To my son, Arthur Hurley, I devise and bequeath three-fifths of the amount of value of all my property, real and personal, at the time of distribution to my heirs at law.

"To my daughter, Elizabeth Devitt, I devise and bequeath two-fifths of the amount of value of all my property, real and personal, at the time of distribution to my heirs at law.

"To my daughter, Josephine Hurley, I devise and bequeath two-fifths of the amount of value of all my property, real and personal, at the time of distribution to my heirs at law.

"To my daughter, Irene Hurley, I devise and bequeath two-fifths of the amount of value of all my property, real and personal, at the time of distribution to my heirs at law.

"And I do hereby further ordain in this my last will and testament, that my said estate shall be divided as hereinbefore mentioned on the basis of three-fifths to my sons and two-fifths to my daughters."

The daughters maintain that upon a proper construction of this instrument, after the termination of the life estate, two-fifths of Hurley's entire property should be divided equally among his three daughters and three-fifths of his entire property should be divided among his six sons. The sons, on the other hand, contend in the alternative, that upon a proper interpretation of the will Hurley's entire property after the life estate should be divided into twenty-four equal parts, three parts to go to each son and two parts to each daughter; or that the will should be held so indefinite and uncertain that there was an intestacy excepting for the admitted creation of the life estate in the widow.

The will was duly offered and admitted for probate in the county court and a decree was there entered which adopted, in

substance, the contention of the daughters and awarded two-fifths of the entire estate to be divided equally among the three daughters and three-fifths of the entire estate to be divided equally among the six sons. The sons appealed to the circuit court where the decision of the county court was affirmed. From this judgment of the circuit court and from the denial of their application for new trial the sons have now appealed to this court.

Appellants, as tending to prove their contention that it was the intention of the testator to give three parts of his whole property to each son and two parts of his whole property to each daughter, were permitted in the court below to introduce testimony to the effect that the sons of testator stayed at home and worked on the farm assisting their father until they were appreciably beyond the age of twenty-one years, whereas the daughters married or left home at earlier ages. From these circumstances appellants urge that it was proper and reasonable to expect that testator might give a somewhat larger portion of his estate to each son than to each daughter. As further proof of such intention on the part of testator, appellants likewise introduced in the court below, over proper objection, the deposition of Nora Hurley, widow of the testator, wherein she recited a statement made to her by the testator immediately after the execution of his will and on the same day. Her testimony in this respect was as follows:

" * * * I had some talk with my husband after he executed the will, the same day he made it, in our own house. * * * After he came from making the will, he came home and says, 'I have made my will, I have left to each of my sons, he says, my boys, three-fifths and to my girls I have left two-fifths, the reason I done that, the boys is the head of the family and supposed to make the living and on the other hand, the boys worked hard to help make this property, therefore, he thought they ought to have an extra share, that's word for word what he said.' * * * He said the boys ought to have an extra share, ought to have a little more than the girls. * * * The only time my husband spoke of the will was the day it was drawn. * * * "

Respondents contend that this evidence of the testator's declaration as to his intention was inadmissible. Our statutory canon for the construction and interpretation of will is set out in sections

643 to 677, inclusive, Rev. Code 1919. Sections 643, 644, and 666 read respectively as follows:

"A will is to be construed according to the intention of the testator. Where his intention cannot have effect to its full extent, it must have effect as far as possible.

"In case of uncertainty, arising upon the face of a will, as to the application of any of its provisions, the testator's intention is to be ascertained from the words of the will, taking into view the circumstances under which it was made, exclusive of his oral declarations.

"When applying a will it is found that there is an imperfect description, or that no person or property exactly answers the description, mistakes and omissions must be corrected, if the error appears from the context of the will, or from extrinsic evidence; but evidence of the declarations of the testator as to his intention cannot be received."

Respondents urge that the deposition of the widow embraces an oral declaration of intention on the part of the testator inadmissible under the sections above quoted. Appellants maintain that, inasmuch as the statement was subsequent to the execution of the will, it does not constitute an inadmissible declaration of intention in futuro, but is properly admissible as statement of fact. We think we need not decide in this case the controversy between the parties on this point, nor need we here decide whether or not such a declaration might be admissible in a proper case.

While it is true that a will is to be construed according to the intention of the testator, it is equally true that the intention of the testator must be expressed in conformity to law, and that the intention to be used as a guide in the instruction is not some intention which may have existed in the testator's mind but the intention which he expressed in his will. If, upon a proper construction of the instrument in its entirety, the intention of the testator can be ascertained it is binding. Extrinsic evidence as to the intention of the testator, whether circumstantial or otherwise, is admissible only when there is ambiguity or uncertainty upon the face of the will. Such evidence cannot be resorted to for the purpose of showing an actual intention in the mind of the testator different from the intention expressed by the context of the will.

"The intention of the testator which courts will carry into effect is that expressed by the language of the will. This language will be interpreted in view of the circumstances surrounding the testator, and evidence will be received to show those circumstances, but it will not be permitted to import into the will an intention different from that expressed by its language, however clearly such different intention may be made to appear." Hollenbeck v. Smith (1907) 231 Ill. 484, 83 N. E. 206, 208.

See, also, Thompson, Construction of Wills, § 45 et seq.; Page on Wills (2d Ed.) § 808 et seq.

■ While the will here involved is perhaps in some respects inartistically drafted, we do not believe that it is indefinite, uncertain, or ambiguous. It is manifest from the instrument that the testator desired to give all his property (subject to the life estate of his widow) to his nine children. It is manifest that he did not intend to exclude any child and it is manifest that he desired the share of each son to be the same as that of each other son and the share of each daughter to be the same as that of each other daughter. Conceding the mathematical truth of the proposition that no whole can embrace more than five-fifths, and conceding that from a casual inspection of the will it might look as though testator had endeavored to dispose of twenty-four fifths of his property, nevertheless, upon more careful analysis, we believe this apparent inconsistency disappears. Section 676, Rev. Code 1919, provides as follows: "A devise or legacy given to more than one person vests in them as owners in common."

It seems very plain from the will in question, considered as a whole, that the testator esteemed himself to be dealing with his property in the form of two separate entities which he regarded as units, the one consisting of the three-fifths part of his property, and the other of the two-fifths part of his property, and that he desired to give the three-fifths part to his sons and the two-fifths part to his daughters. It is entirely clear that he did not desire any one son to take three-fifths of his property to the exclusion of the other sons, or any one daughter to take two-fifths of his property to the exclusion of the other daughters. Suppose that instead of giving the three-fifths of his property to his sons by six separate paragraphs he had made use of one paragraph reading as follows:

"To my sons, Alfred Hurley, Thomas Hurley, Melvin Hurley, Charles Hurley, Harry Hurley, and Arthur Hurley, I devise and bequeath three-fifths of the amount of value of all my property, real and personal, at the time of distribution to my heirs at law."

And suppose that instead of giving two-fifths of his property to his daughters by three separate paragraphs he had accomplished the same by one paragraph reading as follows: "To my daughters, Elizabeth Devitt, Josephine Hurley, and Irene Hurley, I devise and bequeath two-fifths of the amount of value of all my property, real and personal, at the time of distribution to my heirs at law."

And suppose that these two paragraphs had then been followed by the final paragraph of this portion of the will hereinbefore quoted, to wit: "And I do hereby further ordain in this my last will and testament, that my said estate shall be divided as hereinbefore mentioned on the basis of three-fifths to my sons and two-fifths to my daughters."

It would then be very clear that six sons would take three-fifths of the property, share and share alike, as owners in common, and the three daughters would take two-fifths of the property, share and share alike, as owners in common. We do not believe that the situation is changed in this will by virtue of the fact that the testator used six paragraphs instead of one to announce the giving of the three-fifths to his six sons and three pragraphs instead of one to announce the giving of two-fifths to his three daughters. His intention, as expressed by the context of the will, seems to us quite plain, and we do not see how the will can be construed as exhibiting any other intention.

The intention of the testator as expressed by the will being clear and unambiguous, the law must give effect thereto, and it is not material whether the intention thus definitely expressed in the will duly executed does or does not accord with the intention which may have existed in the mind of the testator, nor is it material that testator, subsequent to the execution of the will, may have entertained the opinion in his own mind that he had expressed a different intention in the will. We find no error in the record, and the judgment and order appealed from are affirmed.

All the Judges concur.